UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 13, 2016

LETTER TO COUNSEL

RE: *Terrell Graham v. Commissioner, Social Security Administration*;
Civil No. SAG-16-0267

Dear Counsel:

On January 29, 2016, Plaintiff Terrell Graham petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Mr. Graham filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 14, 2012. (Tr. 173-82). He alleged a disability onset date of December 3, 2011. *Id.* His claims were denied initially and on reconsideration. (Tr. 108-15, 122-25). A hearing was held on June 13, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 30-58). Following the hearing, the ALJ determined that Mr. Graham was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 12-29). The Appeals Council denied Mr. Graham's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Graham suffered from the severe impairments of "affective disorder, specifically depressive disorder; and cerebrovascular disease." (Tr. 17). Despite these impairments, the ALJ determined that Mr. Graham retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is limited to frequently climbing stairs and ramps and balance but only occasionally climb ladders, ropes or scaffolds, kneel, crouch, crawl or stoop. Additionally, he is limited to understanding and carrying out simple instructions, and he is limited to routine and simple tasks with only occasional changes in the work setting where he would not have to make or set goals independently.

*Terrell Graham v. Commissioner, Social Security Administration*
Civil No. SAG-16-0267
October 13, 2016
Page 2

(Tr. 20). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Graham could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 23-24).

Mr. Graham raises two primary arguments on appeal: (1) that the ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); and (2) that the ALJ failed to properly evaluate pertinent evidence proffered by the consultative physicians. Pl. Mot. 6-8. I concur that the ALJ's opinion is deficient under *Mascio*, and thus recommend remand to allow compliance with that decision. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Graham is not entitled to benefits is correct or incorrect.

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* at § 404.1620a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* at § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted).  In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In the instant case, the ALJ found Mr. Graham to have moderate limitations in maintaining concentration, persistence, or pace.  (Tr. 19).  The ALJ noted Mr. Graham's testimony that "he has memory problems and is unable to remember five things his grandmother would ask him to do."  (Tr. 20).  The ALJ also noted medical evidence that Mr. Graham has "borderline ability to learn new information rapidly," decreased "concentration…since his stroke," and a diagnosis of "neurocognitive disorder, related to cerebral vascular accident, dementia, and amnestic disorder."  (Tr. 19).  However, the ALJ also cited medical evidence that Mr. Graham "did not have difficulty with understanding and concentrating," (Tr. 21), "has been able to follow simple commands" in several medical examinations, (Tr. 22, 325-473),  and has not needed mental health treatment or rest breaks during the day, (Tr. 22).  As a result, the ALJ limited Mr. Graham "to routine and simple tasks with only occasional changes in the work setting where he would not have to make or set goals independently."  (Tr. 20).

Ultimately, the ALJ's analysis is simply insufficient to permit adequate review.  The ALJ's use of the term "make or set goals independently" may or may not have intended to limit the pace of a prospective job, but it is unclear whether the VE interpreted that term as a pace limitation. Given that one of the proposed jobs, "machine feeder," appears to be assembly-line in nature, it may be that "make or set goals" does not restrict pace.  In light of this inadequacy, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should impose an appropriate limitation(s) to address Mr. Graham's difficulties or explain why no such limitation is needed.  In so holding, I make no finding as to whether the ALJ's ultimate conclusion that Mr. Graham was not disabled was correct or incorrect.

Mr. Graham makes the additional argument that the ALJ failed to properly evaluate pertinent evidence from the consultative examiners.  Specifically, Mr. Graham contends that "the ALJ favored Dr. Budney's IQ scores instead of Dr. Anderson's."  Pl. Mot. 7.  Dr. Budney's IQ

scores were inflated because he erroneously provided verbal encouragement to Mr. Graham during psychological testing. To support his assertion, Mr. Graham cites Dr. Budney's "[concession] that [test scores] would have been lower without verbal encouragement." Pl. Mot 7. Dr. Budney's encouragement that Mr. Graham perform to the best of his abilities does not vitiate the validity of his IQ scores in light of the record. Principally, Dr. Budney affirmed that "to a reasonable degree of psychological certainty the [test] results are valid and represent [Mr. Graham's] current cognitive abilities." (Tr. 469). Considering the entirety of the ALJ's RFC analysis, I find that the ALJ properly evaluated Dr. Budney's opinion.

Mr. Graham further contends that the ALJ erred in assigning too little weight to the opinion of Dr. Anderson. The ALJ assigned Dr. Anderson's opinion "little weight" because it was not pertinent to the relevant period and was unsupported by clinical evidence. (Tr. 22). Notably, Dr. Anderson opined that Mr. Graham "has poor to no ability to make occupational adjustments and performance adjustments and only fair ability to make personal-social adjustments." (Tr. 22, 614-23). The ALJ found, however, that the test scores from Dr. Budney approximately eight months after Mr. Graham's stroke "reflect a higher level of functioning," and therefore contradict Dr. Anderson's assessment. (Tr. 22, 467-73). Although ALJ noted that Dr. Anderson's examination "may be consistent with her intellectual test findings status-post cerebral vascular accident, those test results are not persuasive." *Id*. To support her conclusion, the ALJ noted that Mr. Graham "is independent with his activities of daily living," "has been cooperative and pleasant, upon examination," and "has been able to follow simple commands." (Tr. 22). Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Mr. Graham's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Applying those standards, I conclude that the ALJ's assignment of weight to the opinion evidence was proper.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 15) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge